<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| GREGORY GUIDO, | : | |
| | : | Civil Action No. 08-1096 (DMC) |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES MARSHALS, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> GREGORY GUIDO, Plaintiff <u>pro se</u>
> Reg. No. 24939-050
> FCI Fort Dix, P.O. Box 2000
> Fort Dix, New Jersey 08640

**CAVANAUGH**, District Judge

Plaintiff Gregory Guido, currently confined at the Federal Correctional Institution ("FCI") at Fort Dix, New Jersey, seeks to bring this action <u>in forma pauperis</u>, alleging claims of negligence and violations of his constitutional rights during the time that he was detained at the Passaic County Jail in Paterson, New Jersey. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be

dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should be dismissed without prejudice, allowing plaintiff leave to file an amended Complaint naming the proper party defendant(s).

I.   BACKGROUND

Plaintiff, Gregory Guido (Guido), brings this action against the following defendants: the United States Marshals and the United States Justice Department. (Complaint, Caption). The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

Guido alleges that the United States Marshals were negligent in bringing him to the Passaic County Jail, knowing the well-documented, deplorable, and inhumane living conditions of that institution. He also alleges that the United States Marshals' were negligent in taking a $32.75 check endorsed and made payable to plaintiff.

Guido next alleges that the conditions of his confinement at the Passaic County Jail from August 27, 2007 to December 12, 2007, violated his right to be free from cruel and unusual punishment, protected under the Eighth Amendment. He further

2

contends that these conditions deprived him of liberty without due process in violation of his Fifth and Fourteenth Amendment rights.  He complains that medical treatment for his bleeding gums and ear infection were delayed.  Guido alleges that his ear drum was pierced by medical personnel during treatment, causing him to suffer an ear infection.  He also alleges that he was denied access to a law library while confined at the Passaic County Jail for this 3½ month period, and that he was not allowed unmonitored calls with his defense counsel.

Guido does not name any defendants relating to his claim concerning the conditions he suffered while confined at Passaic County Jail.  He does provide a detailed summary of the housing conditions at Passaic County Jail and relates that such conditions were documented and recognized in a criminal case before other District Court Judges, in which the defendants in those cases were granted a downward departure on their sentences, although Guido was not.

Guido claims that he has suffered post traumatic stress disorder because of the medical, psychological and other suffering he had to endure while he was confined at Passaic County Jail.  He seeks compensatory and punitive damages in an amount exceeding $8 million.

3

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  Here, plaintiff was a prisoner who is proceeding in forma pauperis, and he is asserting claims against government prison officials with respect to incidents occurring while he was confined.  Consequently, this action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view

4

them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). See also Erickson, 127 S.Ct. at 2200 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2). "Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell v. Atlantic Corp. v. Twombly, 550 U.S. ___, ___ (2007) (slip op., at 7-8) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, where a complaint can be remedied by an amendment, a district court may

not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

## III.  ANALYSIS

### A.  Negligence Claim Against U.S. Defendants

Guido alleges a claim of negligence against the Government defendants, the U.S. Marshals and the U.S. Department of Justice ("USDOJ"), based on the U.S. Marshals having escorted plaintiff to the Passaic County Jail despite the deplorable living conditions there.  Guido does not identify any specific federal statute upon which he is relying to bring suit against the U.S. Marshals and the USDOJ; however, this Court assumes that the claim of negligence, being a tort claim, is brought pursuant to the provisions of the Federal Tort Claims Act ("FTCA"), 28 U.S.C.

§§ 2671, et seq.  A claim against a federal employee alleging

liability on the basis of the commission of a tort is cognizable

under the FTCA.

The FTCA waives the federal government's sovereign immunity

and gives a district court exclusive jurisdiction over civil

actions

> [1] against the United States,[1] [2] for money damages,
> ... [3] for injury or loss of property, ... [4] caused
> by the negligent or wrongful act or omission of any
> employee of the Government [5] while acting within the
> scope of his office or employment, [6] under
> circumstances where the United States, if a private
> person, would be liable to the claimant in accordance
> with the law of the place where the act or omission
> occurred.

28 U.S.C. § 1346(b).  See Dolan v. U.S. Postal Service, 546 U.S.

481, 492-93 (2006)(citing 28 U.S.C. § 1346(b)(1)); Federal

Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 477 (1994); United

States v. Muniz, 374 U.S. 150 (1963); McCloskey v. Mueller, 446

F.3d 262, 265 (1st Cir. 2006); Deutsch v. United States, 67 F.3d

1080, 1091 (3d Cir. 1995).

However, a district court lacks jurisdiction over a federal

tort claim unless the claimant has first exhausted administrative

remedies.  See  28 U.S.C. § 2675(a); see also McNeil v. United

States, 508 U.S. 106 (1993); Deutsch, 67 F.3d at 1091.

Specifically, 28 U.S.C. § 2675(a) provides, in pertinent part:

---

[1]  Plaintiff's claim against the U.S. Marshals and the
USDOJ, a federal agency, must be treated as a claim against the
United States.  See Daniel v. United States, 891 F. Supp. 600,
603 (N.D. Ga. 1995).

An action shall not be instituted upon a claim against
the United States for money damages . . . unless the
claimant shall have first presented the claim to the
appropriate Federal agency and his claim shall have
been finally denied by the agency in writing and sent
by certified or registered mail.  The failure of an
agency to make final disposition of a claim within six
months after it is filed shall, at the option of the
claimant any time thereafter, be deemed a final denial
of the claim for purposes of this section.

Additionally, a tort claim against the United States is
time-barred unless a claimant presents the claim in writing to
the appropriate Federal agency within two years after the claim
accrues, and files the action in the district court within six
months of notice by certified or registered mail of a final
decision of the claim by the agency to which it was presented.
See 28 U.S.C. § 2401(b); Pascale v. United States, 998 F.2d 186,
190 (3d Cir. 1993).  The requirements that a claimant timely
present his claim and that he do so in writing for a sum certain
are jurisdictional prerequisites to a suit in the district court.
Deutsch, 67 F.3d at 1091.

Here, Guido does not allege that he filed a tort claim
notice with the U.S. Marshals or the USDOJ with regard to the
$32,75 check he claims they confiscated, or for any other
negligent acts these defendants allegedly performed.  Thus, this
action is subject to dismissal without prejudice because Guido
has not met the jurisdictional requirement under 28 U.S.C.
§ 2675(a).

B.   Alleged Civil Rights Violations

Guido also appears to assert that his civil rights were violated when he was placed in the Passaic County Jail for over three months under harsh and inhumane conditions, resulting in the denial of medical care and denial of access to the law library.  Specifically, he alleges violations of his Eighth, Fifth and Fourteenth Amendment rights.

1.  *Harsh Conditions of Confinement*

First, Guido alleges that the conditions of his confinement violated his right to due process under the Fifth and Fourteenth Amendment.  He states that he was confined to an overcrowded dorm room for 23 hours per day, being released for recreation for one hour each day.  Guido also states that hot showers were limited and the shower walls were covered with mold.  The air was putrid due to poor ventilation, and rats, mice and roaches were prevalent.  The buildings violated the housing code and had no fire sprinklers.  Staph infections and tuberculosis were rampant.

It appears that Guido may have been a federal pretrial detainee while he was confined at the Passaic County Jail.  As a pretrial detainee, Guido's constitutional claims concerning the conditions of his confinement are considered under the due process clause (of the Fourteenth Amendment) instead of the Eighth Amendment.  See Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir. 2000); Monmouth County Correctional Institutional Inmates v.

9

Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486
U.S. 1006 (1988).  In Hubbard, the Third Circuit clarified that
the Eighth Amendment standard only acts as a floor for due
process inquiries into medical and non-medical conditions of
pretrial detainees.  399 F.3d at 165-67.  Pretrial detainees
retain at least those constitutional rights enjoyed by convicted
prisoners with respect to the conditions of their confinement.
Bell v. Wolfish, 441 U.S. 520, 545 (1979); Hubbard, 399 F.3d at
165-66; Natale v. Camden County Correctional Facility, 318 F.3d
575, 581-82 (3d Cir. 2003).

A conditions of confinement claim is a constitutional attack
on the general conditions, practices, and restrictions of
pretrial or other detainee confinement.  See Scott v. Moore, 114
F.3d 51, 53 (5th Cir. 1997).  A constitutional violation exists
if the court finds that the conditions of confinement are not
reasonably related to a legitimate, non-punitive governmental
objective.  See Bell v. Wolfish, 441 U.S. at 538-39.  Analysis of
whether a pretrial detainee has been deprived of liberty without
due process is governed by the standards set out by the Supreme
Court in Bell v. Wolfish.  See Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions
> or restrictions of pretrial detention that implicate
> only the protection against deprivation of liberty
> without due process of law, we think that the proper
> inquiry is whether those conditions amount to
> punishment of the detainee.  For under the Due Process
> Clause, a detainee may not be punished prior to an
> adjudication of guilt in accordance with due process of
> law. ...

Not every disability imposed during pretrial
detention amounts to "punishment" in the constitutional
sense, however.  Once the government has exercised its
conceded authority to detain a person pending trial, it
obviously is entitled to employ devices that are
calculated to effectuate this detention.  ...

A court must decide whether the disability is
imposed for the purpose of punishment or whether it is
but an incident of some other legitimate governmental
purpose.  Absent a showing of an expressed intent to
punish on the part of detention facility officials,
that determination generally will turn on "whether an
alternative purpose to which [the restriction] may
rationally be connected is assignable for it, and
whether it appears excessive in relation to the
alternative purpose assigned [to it]."  Thus, if a
particular condition or restriction of pretrial
detention is reasonably related to a legitimate
governmental objective, it does not, without more,
amount to "punishment."  Conversely, if a restriction
or condition is not reasonably related to a legitimate
goal--if it is arbitrary or purposeless--a court
permissibly may infer that the purpose of the
governmental action is punishment that may not
constitutionally be inflicted upon detainees qua
detainees.  ...

Bell v. Wolfish, 441 U.S. at 535-39 (citations omitted).  The

Court further explained that the government has legitimate

interests that stem from its need to maintain security and order

at the detention facility.  "Restraints that are reasonably

related to the institution's interest in maintaining jail

security do not, without more, constitute unconstitutional

punishment, even if they are discomforting and are restrictions

that the detainee would not have experienced had he been released

while awaiting trial."  441 U.S. at 540.  Retribution and

deterrence, however, are not legitimate nonpunitive governmental

objectives.  441 U.S. at 539 n.20.  Nor are grossly exaggerated

responses to genuine security considerations.  <u>Id.</u> at 539 n.20, 561-62.

Here, Guido alleges severely discomforting conditions while he was confined at the Passaic County Jail.  At this stage of the proceedings, it would appear that Guido's allegations may be sufficient to state a claim for "punishment" in violation of the Fourteenth Amendment.  Guido alleges that he was forced to live in deplorable and severe overcrowded conditions for 23 hours a day for more than three months with no access to exercise and under unsanitary and unhealthy conditions.  There was no air ventilation, rats, mice and other infestations were rampant, and plaintiff was exposed to disease and staph infections.  As the requirements of the Eighth Amendment set a "floor" for analysis of Fourteenth Amendment due process claims, it is worth noting that denial of the "minimal civilized measure of life's necessities", <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981), which would include basic sanitary conditions that Guido alleges were lacking, would be sufficient to state an actionable constitutional deprivation.  Further, these unsafe, unsanitary and inadequate conditions do not appear reasonably related to a legitimate, non-punitive governmental objective.

2.  *Denial of Access to Law Library*

Guido also alleges that he was denied access to the law library while confined at Passaic County Jail.  He does not

allege any injury stemming from the purported denial of library access.

Courts have recognized different constitutional sources for the right of access to the courts. Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[2] The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement. Bounds v. Smith, 430 U.S. 817, 822 (1977). In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." Id. at 825. "'[T]he touchstone ... is meaningful access to the courts.'"

_____

[2] The right of access to the courts is an aspect of the First Amendment right to petition. McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). See also, Hudson v. Palmer, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974). The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(*quoting* Bounds, 430 U.S. at 823)(internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original). Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges. See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000). But see United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998)

(same); <u>United States v. Walker</u>, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  <u>See</u> <u>Lewis</u>, 518 U.S. at 348-51, 354-55 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

Here, Guido does not allege that he was completely restricted from the use of the library.  In fact, during the time he was confined at Passaic County Jail, Guido was escorted to the law library for eight to ten one-hour visits.  He also was permitted use of a personal computer for legal research.  Guido does not allege any injury as a result of any restrictions from using the law library more frequently.  Consequently, without any allegations of an actual injury, this claim will be dismissed for failure to state a claim.

3.  *Denial/Delay of Medical Care*

Next, Guido alleges that he was not provided treatment for bleeding gums.  He claims that he was told that the jail's health services only extract teeth.  Guido also complains that a nurse practitioner pushed a wooden Q-tip in his ear, which caused the ear to bleed and resulted in an infection.  He does not allege any facts to show that he was not treated for the injury and the infection.  Plaintiff states that he has soreness in his ear, a hole in his eardrum, dizziness, and loss of equilibrium.  He also complains that he has anxiety attacks and sleep deprivation as a result of his treatment while at Passaic County Jail.

The Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, also controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial.  See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 243-45 (1983); Hubbard, 399 F.3d at 158; Fuentes, 206 F.3d at 341 n.9; Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  See also Edwards v. Johnson, 209 F.3d 772, 778 (5th Cir. 2000)(*citing* Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979)); Despaigne v. Crolew, 89 F. Supp.2d 582, 585 (E.D.Pa. 2000) and Montgomery v. Ray, 145 Fed. Appx. 738, 740, 2005 WL 1995084 (3d Cir. 2005)(unpubl.)("the proper standard for examining such claims is the standard set forth in Bell v. Wolfish, ...; *i.e.* whether the conditions of

confinement (or here, inadequate medical treatment) amounted to punishment prior to adjudication of guilt....") (citing Hubbard, 399 F.3d at 158). As mentioned above, the Third Circuit clarified that the Eighth Amendment standard only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees. Hubbard, 399 F.3d at 165-67.

Here, the allegations concerning the eardrum puncture sound only in negligence as against the nurse who allegedly poked plaintiff's ear with a Q-tip. Such claims of medical negligence or malpractice, as asserted here, do not rise to the level of a constitutional violation. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). Guido does not allege that the medial staff failed to treat the puncture or infection during the time that he was confined at the Passaic County Jail.

In addition, Guido's other allegations concerning lack of treatment for his bleeding gums do not rise to the level of a constitutional violation. It appears that plaintiff did seek medical attention for his condition, but was told that they only extract teeth. Further, Guido does not allege that his condition posed a serious medical risk. Consequently, based on these allegations alone, even if true, this Court finds that there was no denial of medical treatment that was so excessive in relation to any stated purpose of jail security and administration, which would infer that such denial was intended as punishment. See Hubbard, 399 F.3d at 158-63; Newkirk v. Sheers, 834 F. Supp. 772,

17

781 (E.D.Pa. 1993). It would appear that Guido was provided medical care for his requested needs, although the treatment did not meet his satisfaction. There are no allegations to suggest that treatment had been denied completely. Guido has not demonstrated any serious medical need that has been purposefully or willfully ignored by defendant. Therefore, this claim alleging denial of medical care will be dismissed for failure to state a claim at this time. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

    4. *Monitored Legal Calls*

    Finally, Guido alleges that he was not allowed unmonitored legal calls with his defense counsel while he was confined at the Passaic County Jail.

    Inmates have a right protected under the First Amendment to communicate with their family and friends by reasonable access to the telephone. Owens-El v. Robinson, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978). Inmates' ability to communicate with their lawyers is further protected by their constitutional right of access to the courts and may implicate the Sixth-Amendment right to assistance of counsel in criminal proceedings. See Aswegan v. Henry, 981 F.2d 313 (8th Cir. 1992)(analyzing telephone use as access-to-courts issue); Owens-El v. Robinson, supra (applying Sixth-Amendment standards to telephone use restrictions). However, it is established that a prisoner "has no right to unlimited telephone use." Washington v. Reno, 35 F.3d 1093, 1100

(6th Cir. 1994) (quoting Benzel v. Grammar, 869 F.2d 1105, 1108
(8th Cir.), cert. denied, 493 U.S. 895 (1989)).  An inmate's
telephone access is "subject to rational limitations in the face
of legitimate security interests of the penal institution." Id.
(quoting Strandberg v. City of Helena, 791 F.2d 744, 747 (9th
Cir. 1986)).

    Thus, inmates' rights to communicate, even with legal
counsel, are not unlimited. Aswegan v. Henry, supra.  Prison
officials can limit communications, particularly telephone
communications, to ensure, safety, security, and the orderly
operation of their institution.  Griffin-El v. MCI
Telecommunications Corp., 835 F. Supp. 1114, 1122-23 (E.D. Mo.
1993), aff'd, 43 F.3d 1476 (8th Cir. 1994).  Numerous and
sometimes stringent restrictions on personal telephone calls by
inmates have been upheld as constitutional.  Most of these
restrictions involve limits on the numbers of calls permitted per
week, limits on persons who can be called, and time limits on
individual calls.[3]

_____

    [3]  Recently, the Supreme Court has held that the telephone
restriction of one social call per week is rationally related to
security and rehabilitation, and not an exaggerated or
unreasonable response to a prisoner's criminal activity prior to
incarceration.  See Beard v. Banks, 126 S. Ct. 2572 (2006)
(holding that ban on all newspapers, magazines, and personal
photographs for inmates housed in long term segregation unit does
not violate First Amendment because it is rationally related to
rehabilitation); Overton v. Bazzetta, 539 U.S. 126 (2003)
(holding that ban on visitation for inmates who commit multiple
substance-abuse violations is rationally related to security and
rehabilitation).

To the extent an inmate asserts that the restriction on telephone use has violated his First Amendment rights, he also must allege that he has suffered any "actual injury" from the telephone restriction. See, e.g., Peterkin v. Jeffes, 855 F.2d 1021, 1041 (3d Cir. 1989)(finding that in order to assert a viable claim of telephone deprivation, an inmate must make some showing of prejudice or actual injury); Lewis v. Casey, 518 U.S. 343 (1996)(stating that a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim).

Here, Guido alleges that he was denied unmonitored legal calls to his defense counsel. Plaintiff is plainly entitled to confidential communication with his legal counsel; thus, if plaintiff's allegations are true, he *may* be able to support a claim under these circumstances sufficient to show a constitutional deprivation.

Nevertheless, this claim and plaintiff's claim concerning the conditions of his confinement at the Passaic County Jail are subject to dismissal because Guido has not named any defendants in his Complaint, other than the United States Marshals and the USDOJ, who have no involvement in the day-to-day operations and administration of the Passaic County Jail.[4]   Therefore, this

---

[4]   In addition, these defendants may be dismissed from this action based on sovereign immunity.   The United States has

Court is constrained to dismiss these claims without prejudice to Guido bringing a new action, or amending this Complaint, by naming the proper party defendants.

V. <u>CONCLUSION</u>

For the reasons expressed above, the Court will dismiss without prejudice plaintiff's tort claim of negligence as asserted against the named defendants, the U.S. Marshals' Office and the USDOJ, because plaintiff has not met the jurisdictional requirements under 28 U.S.C. § 2675(a). In addition, the Complaint will be dismissed in its entirety as against the named federal agency defendants because these defendants are not subject to liability on claims for money damages based on alleged constitutional violations. Further, the Court will dismiss without prejudice plaintiff's claims alleging denial of medical care and denial of access to the law library for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Finally, plaintiff's claims asserting unconstitutional conditions of confinement and denial of

---

sovereign immunity except where it consents to be sued. <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983). In the absence of such a waiver of immunity, Guido cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, <u>see</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, <u>see</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government). Therefore, Guido's claims of constitutional deprivations, if asserted against the U.S. Marshals' Office and the USDOJ, must be dismissed in their entirety against these federal governmental agencies.

unmonitored telephone calls with plaintiff's defense counsel will be dismissed without prejudice to plaintiff bringing a new action or amending his Complaint to name the proper party defendants. An appropriate Order follows.

_____
DENNIS M. CAVANAUGH
United States District Judge

Dated: 4-25-08

22